UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: WM DISTRIBUTION, INC., No. 17-10535-j11

Debtor.

## MEMORANDUM OPINION AND ORDER ON
## APPLICATION TO EMPLOY ATTORNEYS

On June 7, 2017, the Court held a final hearing on Debtor's Application to Employ William F. Davis & Associates, P.C. (Docket No. 5) (the "Application"). Susan Jesmer d/b/a Native Trading Associates ("Ms. Jesmer"), Donald Packingham, and the United States Trustee (the "UST") filed objections to the Application (Docket Nos. 26, 34, and 40) asserting that William F. Davis & Associates, P.C.'s (the "Davis Firm") simultaneous representation of WM Distribution, Inc. ("WM Distribution") and Sandia Tobacco Manufacturers, Inc. ("STM") is a disqualifying conflict of interest.[1] The Davis Firm appeared at the final hearing for WM Distribution. Dylan O'Riley appeared for Ms. Jesmer. Richard Marquez appeared for Donald Packingham. Leonard Martinez-Metzger appeared for the UST.

## FACTS

*Relationship between WM Distribution and STM.*

WM Distribution is primarily in the business of distributing cigarettes to vendors in New Mexico and surrounding states. WM Distribution also distributes food and drinks to those vendors ancillary to its cigarette distribution. WM Distribution has a close working relationship with STM. STM also distributes cigarettes and some food items to vendors in the same territory. Della Packingham, Donald Packingham's estranged wife, is WM Distribution's president and owns 90%

---

[1] The UST did not timely file an objection to the Application, but did file a document titled "U.S. Trustee's Comment on Debtor's Application to Employ Attorneys" (Docket No. 40). In a previous order, the Court with the consent of all parties deemed that document to be a timely filed objection to the Application. *See* Order Resulting From Preliminary Hearing, Docket No. 61.

of WM Distribution's outstanding shares. Donald Packingham is STM's president and owns 90% of STM's outstanding shares. Donald and Della Packingham's divorce is currently pending in New Mexico state court. Donald and Della Packingham's daughter, Donna Woody, owns 10% of the outstanding shares of both WM Distribution and STM. Donna Woody is vice-president of WM Distribution and STM and manages the daily operations of both companies. The Davis Firm reports to and takes instructions from Donna Woody in connection with its representation of WM Distribution and STM.

WM Distribution and STM primarily distribute two cigarette brands, Sandia and Royal. WM Distribution owns the Sandia trademark. STM owns the Royal trademark. STM works with the various governmental regulatory agencies to obtain necessary licenses and approvals for both the Royal and Sandia brands. The Sandia brand is approximately three times more profitable than the Royal brand. For many years, STM manufactured cigarettes under the Sandia and Royal brands. It ceased manufacturing cigarettes several years ago. Today, Seneca, a company unaffiliated with either WM Distribution or STM, manufactures cigarettes under the Sandia and Royal brands for sale to STM. WM Distribution buys cigarettes from STM. STM also sells cigarettes to others.

WM Distribution purchases cigarettes for resale from STM at a rate of approximately $50,000.00 to $60,000.00 each week. WM Distribution scheduled a pre-petition non-priority unsecured debt to STM of $514,113.60 for unpaid cigarette purchases. STM is WM Distribution's largest unsecured creditor by a large margin and holds approximately 50% of WM Distribution's total unsecured debt.

WM Distribution occupies one third of the space in a warehouse STM rents, a value of approximately $3,500.00 a month. WM Distribution does not pay STM for WM Distribution's

use of the warehouse, nor does WM Distribution reimburse STM for WM Distribution's portion of the utilities costs at the warehouse. There is no licensing agreement between WM Distribution and STM for STM's use of the Sandia brand owned by WM Distribution and STM does not pay WM Distribution any licensing fees. WM Distribution and STM regularly use each other's employees without compensation and without tracking such use. WM Distribution and STM are covered under the same insurance policy for worker's compensation and sexual harassment claims. These interrelations, which have lasted for many years, will require accounting and legal work to determine whether one company has a net claim against the other apart from STM's claim against WM Distribution for unpaid cigarette purchases.

*Other creditors with large claims.*

WM Distribution previously leased commercial space from Market Center @ Renaissance, LLC ("Market Center"). STM is a guarantor on WM Distribution's lease with Market Center. WM Distribution scheduled an unliquidated debt to Market Center in the amount of $360,000.00 for unpaid rent. Market Center is WM Distribution's second largest unsecured creditor. WM Distribution's third largest scheduled unsecured debt is almost $300,000.00 less than its scheduled debt to Market Center.

WM Distribution has two secured creditors in this bankruptcy case. WM Distribution's largest secured creditor is Ms. Jesmer. WM Distribution scheduled a secured debt to Ms. Jesmer of $63,224.08. WM Distribution listed STM as its co-debtor on that debt. Ms. Jesmer filed a secured claim of $725,994.73 which it claims is secured by all WM Distribution's assets. Ms. Jesmer identified the basis of that debt as a promissory note and attached a copy of that promissory note (the "Jesmer Note"). The Jesmer Note identifies WM Distribution and STM as the co-makers. Ms. Jesmer contends that STM's bankruptcy filing triggered a default provision under the Jesmer

Note providing for an additional $600,000.00 due under that note, which she seeks to enforce against WM Distribution but not STM. Donald Packingham filed a secured claim of $49,000.00. Donald Packingham's stated basis for that secured claim is "[p]roperty is owned by Donald Packingham." WM Distribution intends to dispute Ms. Jesmer's claim but has not yet filed an objection to the claim. No deadline for objections to claims has been set in WM Distribution's bankruptcy case.

*STM's bankruptcy case.*

STM filed a chapter 11 bankruptcy case on September 19, 2016. *See* Bankruptcy Case No. 16-12335-j11, Docket No. 1. The Court entered an order approving the Davis Firm's representation of STM in its bankruptcy case on October 18, 2016 without objection. *See* Bankruptcy Case No. 16-12335-j11, Docket No. 16. STM's schedules show $423,339.02 in total assets and $15,981,217.69 in total liabilities. Bankruptcy Case No. 16-12335-j11, Docket No. 27.

A large portion of STM's debt is to various federal and state regulatory agencies. STM scheduled a non-priority unsecured debt to Donald and Della Packingham in the amount of $2,800,000.00. Donald Packingham filed a secured claim in STM's bankruptcy case in the amount of $2,000,000.00. STM scheduled a non-priority, contingent, unliquidated, and disputed unsecured $0.00 claim of Market Center. STM identified the basis of the Market Center claim as "[c]ontingent liability for lease of WM, Inc." Bankruptcy Case No. 16-12335-j11, Docket No. 27.

STM scheduled a contingent, unliquidated, and disputed secured debt to Ms. Jesmer of $117,316.18. Ms. Jesmer filed a secured claim in STM's bankruptcy case of $86,466.00. The basis for that claim is the Jesmer Note.

*Conflicts of interest.*

-4-

Donna Woody believes it is in the best interest of both WM Distribution and STM for both companies to successfully reorganize. Donna Woody also believes that, at present, it is in both companies' best interest for WM Distribution to continue to buy Sandia and Royal branded cigarettes from STM. If WM Distribution were to purchase its cigarettes directly from the manufacturer or through another intermediary, Donna Woody believes it would hinder STM's ability to reorganize. One reason WM Distribution purchases its cigarettes from STM rather than directly from the manufacturer is that STM is authorized to purchase cigarettes on which taxes have not yet been paid. Donna Woody also testified, however, that she is considering whether WM Distribution at some point should buy cigarettes directly from Seneca (for which taxes have been paid) instead of buying the cigarettes from STM. This could affect STM's and WM Distribution's profitability, as well as how each company structures its chapter 11 plan. As WM Distribution prepares to draft a plan of reorganization, it will need to consider whether its present relationship with STM is in its best interest for its reorganization prospects. WM Distribution must be able to openly consider options that could negatively affect STM. Donna Woody has a duty of loyalty to both WM Distribution and STM, which will make that consideration more challenging.

*Litigation Over Control of STM*

Donald Packingham, as 90% owner of the capital stock of STM, is seeking to terminate the services of the Davis Firm as counsel for STM and relieve Donna Woody of her authority to manage STM and act as its agent with respect to its bankruptcy case. In an adversary proceeding STM commenced, the Court entered a preliminary injunction enjoining Donald Packingham from taking any action to fill the vacant seat on STM's board. *See* Adversary No. 17-1036, Docket No. 23. The injunction expires when the Court rules on confirmation of a plan of reorganization in the

STM bankruptcy case or as otherwise ordered by the Court, on the condition that STM files a plan and disclosure statement by June 19, 2017. *Id.* STM did so. *See* Bankruptcy Case No. 16-12335, Docket Nos. 181 & 182.

## **DISCUSSION**

The Davis Firm seeks approval of its employment as WM Distribution's general bankruptcy counsel pursuant to 11 U.S.C. § 327(a). That section provides:

> Except as otherwise provided in this section, the trustee,[2] with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C.§ 327(a).

Under this section, proposed counsel must satisfy two requirements: 1) counsel must not hold or represent an interest adverse to the estate; and 2) counsel must be disinterested.[3] *See* 11 U.S.C. § 327(a); *In re 7677 East Berry Ave. Associates, L.P.,* 419 B.R. 833, 841 (Bankr. D. Colo. 2009) (identifying § 327(a)'s two requirements) (citing *In re Cook,* 223 B.R. 782, 789 (10th Cir. BAP 1998)).[4] Subsection (c) of § 327 clarifies that, in a chapter 11 case,

> a person is not disqualified for employment under this section *solely* because of such person's employment by or representation of a creditor, unless there is an objection by

---

[2] A chapter 11 debtor in possession has all the rights of a trustee. 11 U.S.C. § 1107(a). "The debtor-in-possession has the authority to hire an attorney pursuant to 11 U.S.C. § 327." *In re Amdura Corp.,* 121 B.R. 862, 865 (Bankr. D. Colo. 1990).

[3] The Bankruptcy Code defines "disinterested person" as a person that
    (A) is not a creditor, an equity security holder, or an insider;
    (B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and
    (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.
11 U.S.C. § 101(14).

[4] *But cf. In re Project Orange Associates, LLC,* 431 B.R. 363, 369-70 (Bankr. S.D.N.Y. 2010) (observing that "[t]he structure of the Bankruptcy Code distills these dual requirements into a single test for analysis of a conflict of interest.").

another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

11 U.S.C. § 327(c) (emphasis added).

Thus, where the only grounds another creditor or the United States trustee raises as an objection to the proposed employment is counsel's employment or representation of a creditor, the Court may nevertheless approve the application for employment, provided such counsel does not have an actual conflict. *See In re Interwest Bus. Equipment, Inc.,* 23 F.3d 311, 316 (10th Cir. 1994) (explaining that, "if another creditor or the U.S. trustee objects, the bankruptcy judge can disqualify a professional *solely* on the basis of simultaneous representation, *if* it finds the joint representation creates an actual conflict.") (emphasis in original).

Counsel who also represents a creditor is disqualified from representing a debtor if there is an *actual* conflict of interest; *potential* conflicts of interest do not mandate disqualification. *See In re Schwindt,* 2013 WL 321297, at *3 (Bankr. D. Colo. Jan. 28, 2013) (observing that "bankruptcy courts are not required to disqualify counsel for 'potential' conflicts of interest."); *In re Platinum Oil Properties, LLC,* 2009 WL 5201851, at *10 (Bankr. D.N.M. dec.23, 2009) (explaining that § 327 "imposes a *per se* disqualification if counsel for the estate has an actual conflict of interest, whereas the Court has discretion to disqualify counsel that has a potential conflict of interest.") (citing *In re Pillowtex, Inc.,* 304 F.3d 2456, 2561 (3d Cir. 2002) (remaining citations omitted). Even so, "[t]he requirements of subsection (a) are threshold requirements to be met even if subsection (c) is implicated." *Interwest,* 23 F.3d at 316. Counsel who cannot satisfy § 327(a)'s requirements has a disqualifying conflict and may not represent a debtor in possession, unless the limited exception in subsection (c) applies. Even then, counsel may not represent a debtor in possession if counsel has an actual conflict of interest.

The Bankruptcy Code does not define "actual conflict of interest." *7677 East Berry,* 419 B.R. at 844. Courts must examine the surrounding facts and circumstances on a case-by-case basis to determine whether a disqualifying actual conflict of interest bars the requested representation. *See In re Dick Cepek, Inc.,* 330 B.R. 730, 740 (9th Cir. BAP 2006). *See also, Bank Brussels Lambert v. Coan (In re AroChem Corp.),* 176 F.3d 610, 623 (2d Cir. 1999) ("Whether an adverse interest exists is best determined on a case-by-case basis."). "An actual conflict exists if there is 'an active competition between two interests, in which one interest can only be served as the expense of the other.'" *In re Git-N-Go,* 321 B.R. 54, 58 (Bankr. N.D. Okla. 2004) (quoting *In re BH & P, Inc.,* 103 B.R. 556, 563 (Bankr. D.N.J. 1989), *aff'd* in pertinent part, 119 B.R. 35 (D.N.J. 1990)).

Simultaneous representation of two related debtors presents a potential for an actual conflict of interest. Often inter-company transfers will exist, resulting in each debtor holding a claim against the other. Courts often find such dual representation a disqualifying actual conflict. *See, e.g., Interwest.* 23 F.3d at 318 (affirming bankruptcy court's denial of counsel's employment application seeking to represent three inter-related chapter 11 debtors); *In re JMK Construction Group, Ltd.,* 441 B.R. 222, 234 (Bankr. S.D.N.Y. 2010) (counsel seeking to simultaneously represent multiple chapter 11 debtors holding inter-debtor claims against one another held a disqualifying adverse interest); *In re Straughn,* 428 B.R. 618 (Bankr. W.D. Pa. 2010) (counsel disqualified from dual representation of debtor corporation and debtor-principal in related chapter 11 cases); *In re Al Gelato Continental Desserts, Inc,* 99 B.R. 404, 407 (Bankr. N.D. Ill. 1989) (concluding that counsel who sought to represent related chapter 11 debtors held a disqualifying interest adverse to the estate, and observing that there is "substantial authority disapproving simultaneous representation of related debtors holding claims against one another.") (citations

omitted); *In re Lee,* 94 B.R. 172 (Bankr. C.D. Cal. 1989) (counsel could not represent both the corporation and its principal shareholder in each respective bankruptcy case). *See also, In re Wheatfield Bus. Park, LLC,* 286 B.R. 412, 418 (Bankr. C.D. Ca. 2002) ("Where a bankruptcy debtor is a creditor of a related debtor, it is presumptively improper for the same attorney (or law firm) to be general counsel for the related debtors.") (citing *Interwest*, 23 F.3d at 316). However, "the existence of inter-debtor claims does not create a *per se* prohibition of counsel representing both estates." *7677 East Berry,* 419 B.R. at 844 (citing *In re BH & P, Inc.,* 949 F.2d 1300, 1314 (3d Cir. 19910). *See also, Interwest,* 23 F.3d at 318-19 ("[W]e do not hold such simultaneous representation of related estates in bankruptcy is per se prohibited."); *In re BH & P, Inc.,* 949 F.2d 1300, 1314 (3d Cir. 1991) ("The existence of inter-debtor claims is . . . no longer an automatic ground for disqualification of counsel for the trustee.").

The Davis Firm makes two arguments in support of its Application: 1) its simultaneous representation of STM and WM Distribution does not give rise to an actual conflict of interest; and 2) any potential for an actual conflict of interest can be cured by hiring separate conflicts counsel to represent WM Distribution on those matters for which an actual conflict exists. Under the facts and circumstances of this case, the Court disagrees.

There are multiple actual conflicts of interest in the Davis Firm's dual representation of WM Distribution and STM. WM Distribution purchases its cigarettes from STM for distribution, and has an outstanding pre-petition debt to STM of over $500,000. The debt to STM is more than 50% of WM Distribution's total unsecured debt. STM would control the unsecured creditors' class in any chapter 11 plan WM Distribution proposes.

In addition, WM Distribution owns the Sandia trademark, STM's most valuable cigarette brand, yet WM Distribution has no licensing agreement with STM for its use of the trademark.

WM Distribution may need to require STM to pay for its use of the trademark. Or, WM Distribution may determine it is in its best interest to license the use of the Sandia trademark to some other entity. Such a decision could harm STM and negatively affect its reorganization prospects.

WM Distribution occupies some of STM's warehouse, but pays STM no rent or any portion of the utilities expenses. WM Distribution's employees regularly perform work for STM, but without compensation from STM. A single insurance policy covers worker's compensation and sexual harassment claims for both companies. These activities give rise to multiple inter-company claims.

WM Distribution contends that the resolution of any inter-company transfers and shared expenses is simply a matter of accounting, requiring business, not legal judgment and representation of each debtor with respect to any accounting issues could be handled by separate conflicts counsel. "In many cases, the employment of conflicts counsel to handle issues where general bankruptcy counsel has an adverse interest solves most questions regarding the retention of general bankruptcy counsel." *Project Orange,* 431 B.R. at 375.[5] The concept is that if conflict matters – matters in which general bankruptcy counsel's simultaneous representation of more than one debtor would pose a disqualifying conflict of interest – are carved out of the scope of general bankruptcy counsel's representation of the debtors, and are assigned to separate independent counsel, no actual conflict of interest can arise on the part of general bankruptcy counsel. The conflict matters are outside the scope of its representation. However, such use of conflicts counsel is not appropriate where the adverse interests of the debtors represented by the same general bankruptcy counsel are central to the reorganization efforts of either debtor or to

---

[5] *See also, Amdura Corp.,* 121 B.R. at 867 (suggesting that using separate counsel to solve the problem of a disqualifying conflict of interest is worth the Court's consideration).

-10-

other resolutions of the chapter 11 case or where the adverse interests are so extensive that each debtor should have its own independent general bankruptcy counsel. *Cf. Project Orange,* 431 B.R. at 375 (use of conflicts counsel is not appropriate where "the proposed general bankruptcy counsel has a conflict of interest with a creditor that is central to the debtor's reorganization.").

Because use of conflicts counsel was not at issue in *Interwest,* the Tenth Circuit's decision does not foreclose the possibility of using independent conflicts counsel to represent a chapter 11 debtor in matters for which a debtor's proposed general bankruptcy counsel otherwise would hold a disqualifying conflict of interest. Indeed, the Tenth Circuit went out of its way to hold that there is no *per se* prohibition against simultaneous representation of related bankruptcy estates. *Interwest,* 23 F.3d at 318-19.

Use of conflicts counsel, however, is not a viable solution to permit the Davis Firm to represent both WM Distribution and STM. The extent of the areas of adverse interests between the two debtors, which include adverse interests that are central to their respective reorganization efforts, renders it inappropriate to use of conflicts counsel in the case. WM Distribution's best prospects for reorganization may negatively affect STM's reorganization prospects if WM Distribution decides it is in its best interest to purchase the Royal and Sandia brand cigarettes directly from Seneca. STM and WM Distribution need separate counsel to advise the companies as to what is in the best interest of each company regarding their continuing business relationship so each company can best formulate its chapter 11 plan. There is no licensing agreement between WM Distribution and STM for STM's use of the Sandia cigarette brand. Negotiation of a licensing agreement between the two companies would require separate counsel on each side of the negotiation. STM holds about half of WM Distribution's scheduled nonpriority unsecured debt and almost one third of its total debt. WM Distribution's treatment of claims held by STM will be

an important component of any plan WM Distribution proposes and could also affect the reorganization prospects of STM. There is extensive entanglement in the daily operation of the two companies by their use of common labor and facilities without compensation to the other that will need to be sorted out.

A court should approve a debtor's choice of counsel, "only when that professional's judgment and advocacy would be unclouded by divided loyalty." *Interwest,* 23 F.3d at 316. *See also, Rome v. Braunstein,* 19 F.3d 54, 58 (1st Cir. 1994) (stating that § 327(a)'s requirements "serve the important policy of ensuring that all professionals appointed pursuant to section 327(a) tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities."). The areas in which the two companies have adverse interests are such that retention of independent conflicts counsel poses too great a risk that the Davis Firm would nevertheless be unable to give each debtor its undivided loyalty and provide to each debtor untainted advice and assistance in furtherance of their fiduciary responsibilities.

WHEREFORE, IT IS HEREBY ORDERED that the Application is DENIED.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: June 21, 2017

COPY TO:

William F. Davis
6709 Academy NE, Suite A
Albuquerque, NM 87109

Leonard K. Martinez-Metzgar
PO Box 608
Albuquerque, NM 87103

-12-

Case 17-10535-j11    Doc 75    Filed 06/21/17    Entered 06/21/17 17:39:11 Page 12 of 13

Dylan O'Reilly
Miller Stratvert P.A.
PO Box 1986
Santa Fe, NM 87504-1986

Richard Rudy Marquez
1121 4th St. NW, Suite 1-A
Albuquerque, NM 87102